**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MAURICE A. WILLIAMS,**

      **Petitioner,**

**vs.**

                              **CASE NO. 4:07cv271-SPM/WCS**

**WALTER A. McNEIL,**

      **Respondent.**

_____/


**REPORT AND RECOMMENDATION**

This is a petition for writ of habeas corpus filed by Maurice A. Williams pursuant

to 28 U.S.C. § 2254.  Doc. 6.  Petitioner challenges his convictions for attempted first

degree murder and possession of a firearm by a convicted felon in the Circuit Court of

the Second Judicial Circuit, in and for Leon County, Florida, case number R00-1499-AF.

Respondent filed an answer.  Doc. 13.  Petitioner has not filed a traverse.

**State procedural history**

On the day of trial, Petitioner entered a nolo contendere plea pursuant to a plea

agreement.  The plea agreement permitted a minimum mandatory 20 year sentence for

attempted first degree murder, with a maximum sentence of life in prison.  The agreement contemplated a concurrent sentence for the firearm charge.

Before sentencing, Petitioner filed a motion to withdraw his plea.  New counsel was appointed, and after a hearing, the motion was denied.  Petitioner was sentenced to 30 years in prison for attempted first degree murder and to a concurrent 15 year term for the firearm charge.

Petitioner took a direct appeal contending error in the refusal of the trial court to permit him to withdraw his nolo contendere plea.  The convictions were affirmed.

Petitioner filed a Rule 3.850 motion, counsel was appointed, and, after an evidentiary hearing, the motion was denied.  An initial appeal from this decision was denied as untimely, but Petitioner was granted leave to file a belated appeal.  The appellate court affirmed the denial of Rule 3.850 relief.

Respondent sets forth this procedural history and asserts that the trial court's order denying rehearing after denial of the Rule 3.850 motion had the wrong prisoner's name in the certificate of service.  Doc. 13, p. 5.  It was this error that caused the untimely appeal and the granting of the belated appeal.  Noting that equitable tolling would probably be appropriate, Respondent acknowledges that the petition "appears to be timely."  *Id.*, p. 6.  The timeliness of the petition in this court, therefore, is not at issue.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly

exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing Picard).  If a claim was not fairly presented but is procedurally barred from further state court review,[1] Petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel applies to post-conviction review as well, and a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Fla.R.Crim.P. 3.850 relief to exhaust remedies); LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005), cert. denied, 126 S.Ct. 1458 (2006) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing Coleman); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process").

---

[1] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been properly exhausted, to distinguish them from claims exhausted by procedural default.  See O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

For claims that were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted); Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct.

at 1850.  *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams,

other citations omitted).  "Avoiding these pitfalls [described in Williams v. Taylor] does

not require citation of our cases – indeed, it does not even require *awareness* of our

cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them."   Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d

263 (2002) (emphasis in original).  Further, "whether a state court's decision was

unreasonable must be assessed in light of the record the court had before it."  Holland

v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a

petitioner to show that the conduct was unreasonable, a petitioner must establish that

no competent counsel would have taken the action that his counsel did take."  Chandler

v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S.

1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing

Chandler).  There are no rigid requirements or absolute duty to investigate a particular

defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always
> better.  Stacking defenses can hurt a case.  Good advocacy requires
> 'winnowing out' some arguments, witnesses, evidence, and so on, to
> stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill. The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370. In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial. United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim is not "contrary to" the rule of Strickland as intended by § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that the trial court erred when it denied his motion to withdraw his guilty plea.  Doc. 6, p. 4.  The trial was scheduled for March 15, 2001.  *Id.* He entered into a negotiated guilty plea for a minimum 20 year sentence but became unhappy with his lawyer because this plea was different from the "plea offer of 3-years in prison made the day before by the assistant state attorney."  *Id.*, p. 4A; p. 5 on ECF

(electronic case filing docket).  Petitioner told the trial court that he understood he was offered a 3 year sentence for possession of a firearm as a convicted felon and he "did not hear any discussion of a plea bargain involving a twenty-year sentence."  *Id.* Petitioner told the trial court he wanted to go to trial, but his lawyer did not, and he asked for appointment of a new attorney.  *Id.*, pp. 4A-4B; pp. 5-6 on ECF.  The trial judge refused to appoint a new attorney, and the court also denied his request to withdraw the plea.  *Id.*, p. 4B; p. 6 on ECF.

Petitioner then sets forth the trial court's reasoning for denying the motion to withdraw the plea.  The state judge reasoned that a plea agreement should be a meeting of the minds, that a trial should proceed if a party was confused as to an essential element of the agreement, but she found that a plea agreement would not be rescinded simply because the party was under the stress of a difficult decision.  *Id.*  The trial judge said that a change of heart was not a basis for withdraw a guilty plea.  *Id.*

Petitioner contends that this decision was "contrary to clearly established federal law," but fails to identify the federal law.  A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).  Thus, Petitioner has failed to state a federal claim in his petition.

That the state court only ruled on state law issues (and therefore any federal claim Petitioner might have brought in this court is unexhausted) is evident from the

state record.  On March 15, 2001, the day of the trial, Petitioner expressed

dissatisfaction with his attorney, Robert A. Morris, and the trial court held a hearing on

whether to appoint a new attorney.  Doc. 13, Ex. C (record on appeal), R. 21.  Petitioner

said he had not had enough time to "look over my case," and he felt that there had been

a "whole turnaround of that whole plea offer."  *Id.*, R. 22.  The trial court said "we are

happy to provide you with a trial."  *Id.*, R. 24.

Petitioner's counsel represented to the court that he had conveyed an offer to the

prosecutor that Petitioner plead guilty to the attempted first degree murder charge in

exchange for a waiver of the "10-20-life" provision and the guidelines, and said that

Petitioner was "somewhat positive" to that offer.  *Id.*, R. 25.  The prosecutor refused that

offer, however, and countered with an offer to a plea to a minimum mandatory 20 years,

but with a possibility of a longer sentence.  *Id.*  That offer was communicated to

Petitioner the next day.  Petitioner's attorney said he thought Petitioner was "being hit

with a lot of information all at once."  *Id.*, R. 25-26.  Counsel acknowledged that

Petitioner was "having to make some very difficulty decisions."  *Id.*, R. 26.  Counsel said

that even if he could convince the jury to convict Petitioner of aggravated battery, "it is a

mandatory life sentence [2] under the 10-20-life Act, regardless . . . or 20 to life would be

the sentence."  *Id.*, R. 26-27.  Counsel then said:

> *He has advised me today that he will not testify.*  Because of that I cannot
> really pursue a self-defense case, and it leaves me in a posture where, as
> his defense attorney, my hands are literally tied.

*Id.*, R. 27 (emphasis added).

_____

[2] The possible mandatory life sentence was the result of Petitioner qualifying as a
prison releasee reoffender under Florida law, as will be explained ahead.

Case No. 4:07cv271-SPM/WCS

Petitioner told that court that the day before, he was told that the offer did not include a mandatory sentence, and "now I'm here this morning, all of the sudden it's a mandatory sentence." *Id.*, R. 29.   Counsel for Petitioner made it clear that in plea discussions the day before, the prosecutor himself was not able to agree to a plea with no minimum mandatory sentence ("waiver of everything"), and he had to call his superiors for such permission.  *Id.*, R. 31.  The prosecutor called counsel back and the only plea offer from the State was to plead to a 20 year minimum mandatory sentence, the one that was "now on the table."  *Id.*, R. 31-32.  Counsel explained that this was not a situation where the prosecutor was "reneging on something, or the defense attorney is reneging on something."  *Id.*, R. 32.

The court then inquired as to whether Petitioner's attorney was prepared for trial. *Id.*, R. 33.  He said he was.  *Id.*  He said that he had taken depositions in several cities, including a deposition of the victim, he had looked at the ballistics reports and the latent fingerprint analysis, and he was "fully prepared for trial." *Id.*, R. 33-34.  The court denied Petitioner's motion to replace Petitioner's counsel, finding that Mr. Morris had provided effective assistance to that point.  *Id.*, R. 34.

A brief recess then occurred.  *Id.*, R. 36.  When the court reconvened, counsel for Petitioner stated that Petitioner wished to enter a no contest plea to the two counts (the counts had been severed from one another for trial).  *Id.*  There was no agreement for a sentence.  *Id.*  Petitioner faced a sentence from a minimum mandatory term of 20 years in prison to life for attempted first degree murder.  *Id.*

The plea colloquy began, and Petitioner was placed under oath.  *Id.*, R. 37.  He acknowledged that he signed the plea agreement.  *Id.*  He said he understood that the

court was prepared to begin a jury trial that day, but he was giving up his right to a jury trial.  *Id.*, R. 38.  Petitioner said he understood he was giving up the right to testify on his own behalf and to present the defense of self-defense.  *Id.*, R. 38-39.  Petitioner said he understood that he faced a minimum mandatory 20 year prison sentence with no gain time, and that the court had discretion to impose a longer sentence.  *Id.*, R. 40-41.  The court then asked whether anyone had promise Petitioner "about what sentence I would impose," and Petitioner said "No, your honor," "Nothing but what I addressed earlier, Your Honor.  But on that plea, no."  *Id.*, R. 41.  The court explained that the minimum mandatory 20 years meant 20 years without gain time.  *Id.*, R. 42.  The plea was accepted.  *Id.*, R. 45.

Three months later, on June 15, 2001, the date of sentencing, the state court held a hearing on Petitioner's motion to withdraw his plea. Ex. C, R. 50.  A new attorney had been appointed to represent Petitioner.  *Id.*, R. 51-52.  Counsel argued that Petitioner thought he was going to get a three year sentence for possession of a firearm as a convicted felon, and nothing more.  *Id.*, R. 59.  It was his claim that the 20 year minimum mandatory plea offer was a "surprise situation."  *Id.*, R. 60.

Petitioner testified that he discussed plea offers with his trial attorney on the day before the trial.  *Id.*, R. 61.  This discussion happened at the jail.  During this jail visitation, Morris received a cellphone call from Ron Flury, the prosecutor, and Morris:

> put the visitation jail phone up to his cellular phone and allowed me to listen to Mr. Ron Flury on the discussion on my behalf, what they were going to offer me on a plea, which was three years mandatory, and I guess with some probation behind it, for possession of a firearm.

*Id.*, R. 62.  Petitioner said he heard this "pretty clearly."  *Id.*  Petitioner said that he could

listen only intermittently, that "[a]fter I heard just so much, he would take it away and he

would talk to him and then talk to him himself."  *Id.*  Petitioner denied hearing anything

that day about a 20 year plea offer.  *Id.*  He concluded from this that the "final deal" was

"three years mandatory."  *Id.*

Petitioner said that the next day, Mr. Morris told him that Mr. Flury had "backed

down on the plea of the three years mandatory."  *Id.*, R. 63.  Morris told Petitioner he

had an offer from 20 years minimum mandatory and Petitioner said "I don't want that,"

that he wanted to go to trial.  *Id.*  He said his attorney told him he would get life in prison

if he went to trial.  *Id.*

Mr. Morris testified that until the time of "docket sounding," the prosecutor had

made no plea offers.  *Id.*, R. 70.  Morris said:  "There was never a three year offer

conveyed by the State."  *Id.*, R. 71.  Instead, Morris sought plea agreements for 10, 15,

and 20 year sentences, but those offers were not accepted by the State.  *Id.*  The last

offer that Morris conveyed to the prosecutor was a plea to sentencing without minimum

mandatory terms and with gain-time eligibility, but the State, represented by Mr. Flury,

refused.  *Id.*, R. 72.  The State countered with the plea offer that Petitioner accepted:  a

plea to attempted first degree murder subject to a minimum mandatory 20 year

sentence, but gain-time eligible after 20 years, and leaving the sentence (between 20

years to life) to be argued by the parties.  *Id.*  That was the only plea offer ever

conveyed by the State, said Morris.  *Id.*

On cross examination, Morris said that the one defense that he and Petitioner

discussed at length was self-defense.  *Id.*, R. 75.  Morris said he never gave Petitioner

"any indication that I felt good about going to trial with that defense," but he was prepared to do so.  *Id*.  The allegation was that the victim "had a knife," but, said Morris, "there was absolutely no corroboration of that whatsoever from the four eyewitnesses present at the scene."  *Id*.

Morris said that the day before the trial was to commence, he talked with Petitioner at the jail, as well as Mr. Flury by cellphone, and he did not think that Petitioner could hear Mr. Flury clearly.  *Id*., R. 77.  Morris said it was possible that Petitioner heard him tell Mr. Flury: "I presume this will involve a three year minimum mandatory."  *Id*.  Morris said he also probably told Annie Williams that a portion of the sentence would involve a three year minimum mandatory prison term.  *Id*.

On the day of the plea, Morris denied that Petitioner told him that he thought the deal was for a three year minimum mandatory sentence.  *Id*., R. 79.  Instead, said Morris, Petitioner was upset because he thought he had been offered a sentence from zero to life, with no minimum mandatory time, since that was the last offer Morris had conveyed to Flury, but Flury rejected that.  *Id*.

The circuit court issued its ruling from the bench.  The court began with citation to several Florida cases interpreting FLA. R. CRIM. P. 3.170, which governs a Florida court's discretion to permit withdrawal of a plea.  *Id*., R. 90-91.  The court said:

> Now, the Court will acknowledge that the case law indicates that the law inclines towards a trial on the merits and that in order for a plea to be freely and voluntarily given it has to be a meeting of the minds.  And *Yesnes*[3] . . . indicates that when a party is mistaken, confused, or [has] a misunderstanding of the essential terms of the agreement, there can be no meeting of the minds.

---

[3] Yesnes v. State, 440 So. 2d 628 (Fla. 1st DCA 1983).

*Id.*, R. 91.

The court found that it not "in the least bit credible" that Petitioner thought that a three year prison sentence was offered by the State. *Id.*, R. 94-95. The court also found that the State "certainly would have required a plea in this case to the most serious offense." *Id.*, R. 95. The court found probation "not even an option in this case." *Id.* The court ruled that Petitioner's "change of heart" was not a basis for withdrawal of the plea. *Id.*, R. 96. Grounds for withdrawal of the plea were lacking, and withdrawal of the plea was denied. *Id.*, R. 96-97.

In summary, Petitioner did not present a federal issue to the state court when he sought to withdraw his plea. He relied instead upon the apparently more lenient state standard. As explained in <u>Yesnes v. State</u>, 440 So. 2d 628 (Fla. 1st DCA 1983), the trial court has discretion to permit a plea to be withdrawn upon a showing of good cause, and the court said that the rule should be liberally construed in favor of the defendant since the law favors a trial on the merits. 440 So. 2d at 634.

Since Petitioner did not present a federal claim to the state court, he failed to exhaust state court remedies and the claim is now procedurally defaulted. Petitioner has not shown cause for the default. Moreover, as explained ahead, he cannot show prejudice to the outcome. Consequently the court should not reach the merits of ground one.

Alternatively, even one assumes that Petitioner presented a federal due process claim to the state court, the state court's disposition of that claim has not been shown to have "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial.  *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  *Id.*; *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir.1986) (*per curiam*).

Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995).

A due process claim must necessarily fail in this court as Petitioner has not come forward with clear and convincing evidence to rebut the presumption that the factual findings of the state court are correct.  Petitioner was never offered a plea agreement for a 3 year sentence.  The cellphone conversation between Morris and Flury took place at the jail.  Morris and Petitioner were probably separated by a glass partition since they had to speak to one another by telephone.  Petitioner's only ability to hear the conversation between Morris and Flury on the cellphone was through the visitation telephone.  At most, Petitioner might have heard Morris mention the 3 year minimum mandatory term for the firearm charge to Flury.

Mr. Flury would never have offered a 3 year sentence for the offenses for which Petitioner was charged.  Petitioner qualified for sentencing as a prison releasee reoffender for a conviction of attempted first degree murder.  Doc. 13, Ex. B, R. 56; FLA. STAT. § 775.082(9)(a)1.b.  The prosecutor was authorized to seek a prison releasee reoffender sentence, and had he done so, the only sentence the court could have imposed would have been a mandatory life prison term.  FLA. STAT. § 775.082(9)(1)3.a. For these two reasons, ground one affords no relief.

**Ground Two**

Petitioner claims his attorney was ineffective for failing to prepare and establish valid defenses. Doc. 6, p. 4; p. 4 on ECF. Petitioner argues that the victim, whom he shot six times, had a history of violence toward him, "attempting to run over him, striking him, and attacking him with weapons such as a fork." *Id.*, p. 4C; p. 7 on ECF. He claims that his attorney was ineffective for failing to prepare the defense of necessity (possession of the firearm as a convicted felon) and self-defense (attempted murder). *Id.* Petitioner claims he would not have entered his pleas had his attorney been effective with respect to these defenses. *Id.* Petitioner asserts that he got the firearm after the victim's family "had gone to Petitioner's mother['s] home and threatened to kill him." *Id.*, p. 4D; p. 8 on ECF. Respondent concedes exhaustion of state court remedies as to this claim. Doc. 13, pp. 18, 21.

This claim was raised in Petitioner's Rule 3.850 motion. The state court appointed counsel for Petitioner and held an evidentiary hearing. Doc. 13, Ex. G (Rule 3.850 record on appeal), R. 34-102. The trial court denied this claim and the others presented with a ruling on the record. *Id.*, R. 97-102. The court held that Petitioner had "failed to show any evidence that there is even favorable evidence out there." *Id.*, R. 97. Petitioner had asserted that the sister had become involved in the argument, called Petitioner names, and tried to incite the victim's cousins to attack him, but Petitioner's trial attorney testified that this sister was "mentally deficient." *Id.*, R. 97-98. The court found it "ludicrous on the facts" that the victim's sister, "the main instigator," would have come forward and provided favorable testimony as to self-defense or the defense of necessity. *Id.*, R. 98-99. The court noted that possession of the firearm was the least of

Petitioner's problems since he faced trial for attempted first degree murder.  *Id.*, R. 99.
The court said:

> In fact, I don't know how Mr. Morris was going to sell a self-defense in a
> case of multiple gunshot wounds, at least one, probably two, of which
> were while the victim was laying on the floor.

*Id.*

The state court found that Petitioner's lawyer was aware of the prior incidents
with the victim and the victim had admitted them.  *Id.*, R. 100.  Petitioner's lawyer felt
that those prior incidents would have had no impact on the case.  *Id.*  While Petitioner
faulted counsel in ground six in the Rule 3.850 motion for failing to obtain ballistics
information, no evidence about that claim was presented at the Rule 3.850 hearing.  *Id.*
In ground nine, Petitioner faulted his attorney for failing to depose the victim, Sabrina
Lifhred, but Morris did depose her.  *Id.*, R. 101.  The court denied the motion.  *Id.*

Petitioner has not shown by clear and convincing evidence that these factual
findings by the trial court are incorrect.  Hence the presumption of correctness remains
and those facts govern Petitioner's claims in this court.

Nor has Petitioner shown that the trial court's rejection of his claim of ineffective
assistance of counsel has "resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States."  § 2254(d)(1).  There is no evidence that the
defense of self-defense would have been successful.  Petitioner's attorney told the trial
court that none of the four witnesses present at the time of the attempted murder would
testify that the victim was threatening Petitioner with a knife.  Doc. 13, Ex. C, R. 75.  The
only witness who might have so testified was Petitioner, and on the day of the trial, he

decided not to testify.  Doc. 13, Ex. G, R. 81-82.  These findings by the trial court are

entitled to the presumption of correctness, which has not been rebutted.  Petitioner had

an opportunity at the Rule 3.850 hearing to call other witnesses who would have

testified that they saw the victim threaten Petitioner with a knife, but he did not.  The

argument, therefore, was completely unsupported before the state court, is still

unsupported in this court, and this defeats the claim.  Aldrich v. Wainwright, 777 F.2d

630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory

allegations about the testimony of uncalled witnesses are insufficient to state a claim of

ineffective assistance of counsel).

        Moreover, the circumstantial evidence did not support a self-defense theory.  No

knife was recovered from the scene.  *Id.*, R. 81.  Even if the victim had a knife, the

ballistics evidence showed that Petitioner shot one or two bullets into the victim while

she was on the ground.  *Id.*  This is so because one, and perhaps two, of the bullets

penetrated the victim's body and then flattened on the concrete floor.  *Id.*  A trajectory

into the floor would have been impossible had the victim been standing and threatening

Petitioner with a knife.  There was also evidence from the surgeon who treated the

victim after the shooting that the victim suffered six bullet wounds, and three bullets

remained lodged in her body at the time that he treated her.  Doc. 13, Ex. C, R. 99-100.

One of the bullets that did not lodge in the victim's body entered the victim through her

back, evidence inconsistent with self-defense.  *Id.*, R. 99.  A second bullet that did not

lodge entered the victim's right chest.  *Id.*  A third bullet went through the victim's left

thigh.  *Id.*, R. 100.  From this, the jury could reasonably have concluded that Petitioner

shot the victim in the back and then shot her in the right chest and left thigh while she was on the ground. This evidence is significantly inconsistent with self-defense.

The defense of necessity with respect to the charge of felon in possession of a firearm would not have succeeded either. The defense of necessity exists only if, *inter alia*, (1) the defendant did not place himself intentionally or recklessly into a situation where it would be probable he would be forced to choose criminal conduct, (2) the firearm became available to the defendant without preconceived design, and (3) the defendant relinquished possession of the firearm as soon as the necessity ended. State v. Chambers, 890 So. 2d 456, 458 (Fla. 2d DCA 2004). Petitioner testified that he obtained the firearm after the "St. Lucie" incident, which had happened about a month earlier;[4] he said that the "guys" that had threatened him "never came back;" and he admitted that he did not divest himself of the firearm after the threat had ended. *Id.*, R. 53-54. Thus, the defense of necessity would not have prevailed. Ground two is without merit.

**Ground Three**

Petitioner contends that his attorney was ineffective for failing to obtain records essential to his defense. Doc. 6, p. 5; p. 10 on ECF. The records concern police reports of the threats of violence to Petitioner in Fort Pierce, Florida (the "St. Lucie" incident) and another incident when the victim assaulted petitioner. *Id.*, p. 5A; p. 11 on ECF. Other records to prove these threats or assaults were telephone records and the probation records of the victim's sister. *Id.*, p. 5B; p. 12 on ECF. The purpose of this

---

[4] Further, Petitioner asserts in ground six that he obtained the firearm from his cousin, showing that he obtained it with preconceived design.

evidence was to show the propensity of the victim and her family for violence and to establish his defenses of necessity and self-defense.

Respondent argues that Petitioner did not present this claim as such on appeal from the denial of his Rule 3.850 motion.  Respondent is correct.  In his brief on appeal, Petitioner first argued that his trial attorney was ineffective because he did not properly advise Defendant and prepare a defense.  Doc. 13, Ex. Q, p. 1.  The gist of the claim is that counsel did not prepare the defenses of necessity and self-defense.  *Id.*, pp. 2-.  He argues specifically that counsel erred in not interviewing or deposing Dessa Charles, who was an eye witness to the incident.  *Id.*, p. 3.  Petitioner did not set forth what Ms. Charles would have said, however.  *Id.*  Morris said that none of the eye witnesses saw a knife.  In any event, this is essentially the same claim as Petitioner brings to this court as ground one, and that is why Respondent conceded exhaustion as to that claim.  It has been addressed above.

The second claim argued on appeal from denial of the Rule 3.850 motion was that Petitioner's attorney was ineffective for "failure to investigate."  *Id.*, p. 5.  Here again Petitioner argued that his attorney should have interviewed Dessa Charles.  *Id.*, pp. 5-8. Petitioner asserted that he believed that the testimony of Ms. Charles would have provided the basis for self-defense, but again he failed to set forth the specifics of what Ms. Charles would have said.  This is essentially the same claim as the first.

The third claim presented in the brief was not a federal claim.  There Petitioner argued that the trial court had erred by failing to attach those portions of the record of the evidentiary hearing that conclusively showed that Petitioner was not entitled to relief. *Id.*, p. 9.  This is a state procedural issue only.

The fourth claim is that due to ineffective assistance of counsel, Petitioner's plea was involuntary.  *Id.*, p. 11.  Again, Petitioner made the same sort of factual allegations, that his attorney was ineffective for failing to take depositions "from any of the alleged witnesses to the crime" or to prepare the defense of self-defense.  *Id.*, p. 12.  The self-defense theory was premised upon the fact that Petitioner had had previous violent encounters with the victim.  *Id.*, p. 13.

In summary, Petitioner did not present the specifics of ground three to the state appellate court in his appeal from the denial of his Rule 3.850 motion.  The claim is now procedurally defaulted.  Petitioner cannot show prejudice to the outcome because the trial court's determination, that the prior violent relationship between Petitioner and the victim, was known to Petitioner's counsel, admitted by the victim, and would not have justified shooting the victim six times with a handgun.  The court should not reach the merits of ground three.

**Ground Four**

Ground four is that counsel was ineffective for failing to depose "law enforcement officers."  Doc. 6, p. 5; p. 10 on ECF.  One law enforcement officer was an officer who responded to a 911 call and "had knowledge of the Petitioner taking Sabrina's vehicle upon his arrival at the Petitioner's mother house, [sic] but the victim's family continued to threaten the Petitioner because he took the vehicle, and they were not leaving until the Petitioner returned him, these threats on Petitioner's life was heard by the responding office to the 911 call."  *Id.*, p. 5D; p. 14 on ECF.  Petitioner also claims that the Sheriff's Department knew that the victim had stabbed Petitioner on a previous occasion.  *Id.*  All of this was to show the aggressive nature of the victim toward Petitioner.

The claim is procedurally defaulted because not raised on appeal from the denial of the Rule 3.850 motion.  Prejudice cannot be shown for the reasons discussed with respect to ground three.  The court should not address the merits of this ground.

**Ground Five**

Petitioner alleges that his attorney rendered ineffective assistance by failing to obtain experts in ballistics and trajectory.  Doc. 6, p. 5F; p. 16 on ECF.  He contends that this sort of evidence would prove that the victim was "running towards him . . . with a knife, which caused him to react out of fear for his own safety, turned, screamed and opened fire."  *Id.*  The court cannot reach the merits of this claim.  It is procedurally defaulted because not raised on appeal, and cause and prejudice for the default has not been shown.

**Ground Six**

Petitioner contends his lawyer was ineffective for failing to depose his "cousin Nobles."  *Id.*, p. 5G; p. 17 on ECF.  Nobles, states Petitioner, was the person from whom he obtained the firearm "and was aware of the circumstances in which the firearm was needed."  The claim is procedurally defaulted and cause and prejudice for the default has not been shown.  Therefore, the court cannot address the merits of the claim.

**Ground Seven**

Petitioner contends his lawyer was ineffective for failing to depose the victim's mother and her sister, Sabrina Lifhred.  *Id.*, p. 5H; p. 18 on ECF.  Sabrina Lifhred, states Petitioner, would have testified that in Fort Pierce, she had had called Petitioner's mother and made threats.  *Id.*  This claim is on the same footing as grounds three

through six.  The court cannot address the merits because it was not presented on appeal, is procedurally defaulted, and cause and prejudice for the default has not been shown.

**Conclusion**

Accordingly, it is **RECOMMENDED** that this § 2254 petition for writ of habeas corpus filed by Maurice A. Williams challenging convictions for attempted first degree murder and possession of a firearm by a convicted felon in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number case number R00-1499-AF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on June 11, 2008.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**